NEAFIE & LEVY, APPELLANTS, VS. MILLER & HENDERSON, APPELLEES.

DISCOVERY OF BOOKS AND DOCUMENTS—WHEN PERMITTED TO ENABLE PARTIES TO PREPARE PLEADINGS UNDER RULE 58 CIRCUIT COURT RULES.

1. Rule 58, for the government of the Circuit Courts in common law actions, making provision to compel the discovery and production of books, papers and documents in the possession or under the control of a party, that may be necessary to enable the other party to frame his reply or answer to any pleading of his adversary, was adopted here from the rules of practice of the Supreme Court of the State of New York. When invoked, the application for discovery under it must specially state what information is wanted, and that the books or papers referred to contain such entries; and this must be stated upon positive affirmation, and not on mere information and belief. The rule was never designed to allow parties to *fish for evidence* in the private books of account, or documents of others. A discovery under this rule may be ordered to assist the defendant to facts, without which he can not *frame* a pleading that will protect his rights in the action itself; but the object for which discovery will be ordered under it is not to prevent a defendant from pleading untruthfully, or to inform him how fully he may have furnished the plaintiff with the means of disproving the pleading that he proposes to interpose. Applications under the rule should not be granted when it is manifest upon the face of the application itself that the defendant has no defense that he can not set up *in due legal form to raise the proper issues*, without the aid of the papers sought for. In applications of this kind the applicant must show *how* or *why* it is *necessary* to have the discovery in order to *prepare* or *formulate* his pleading. The bare fact that a defendant's own

books have been destroyed that contained his entries of his side of transactions with the plaintiff will not authorize the invocation of the rule.

2. Whenever a proper case is presented for the enforcement of this rule, and the party against whom it is invoked, together with his books or the documents sought, are in another State, or at such distance as that a production of them in court would be attended with great expense, inconvenience or detriment, the judge should never require the production of the originals, where sworn copies of the pertinent matters therein would fully subserve the purposes and objects of the rule.

3. Where the party against whom this rule has been invoked fails or refuses to comply with the order for discovery and production of his books or papers, the Clerk of the Circuit Court has no authority to visit such failure or refusal with the entry of a judgment of dismissal of the plaintiff's case and for costs.

Appeal from the Circuit Court for Escambia county.

The facts in the case are stated in the opinion of the court.

*Phillips & Carter*, for Appellants.

*Sparkman & Sparkman*, for Appellees.

TAYLOR, J.:

The appellants as plaintiffs below, citizens of Philadelphia, Pennsylvania, sued the appellees, citizens of Tampa, Florida, in assumpsit upon an account for work and labor done and performed, and materials for the same furnished for the defendants, and for moneys paid, laid out and expended for the use of the defendants, and upon account stated; the declaration containing the usual money counts. Attached to the declaration was a copy of the itemized account sued upon.

Before pleading, the defendants, after notice to the plaintiffs, presented their petition to the Circuit Judge alleging that the suit was based upon transactions which they had with the plaintiffs, who reside in the city of Philadelphia, State of Pennsylvania, during the period from February 9th, 1879, to May 12th, 1887, a period of more than eight years. That sometimes their transactions were had with one member of the plaintiff firm, and at other times with another of its members. That they are not really indebted to the said plaintiffs in any sum, but owing to the fact that petitioners' books of account with said plaintiffs were destroyed by fire a few years ago, they are without the necessary data to prepare a proper defense to said suit.

That not only do your petitioners owe the plaintiffs nothing, but they are satisfied the plaintiffs are largely indebted to them, but on account of the destruction of their books as aforesaid they are unable to show the same by appropriate pleading unless they are permitted to see and examine the books of plaintiffs in which the items and all the transactions between the plaintiffs and defendants, and upon which said suit is based. The petition prayed the court for an order compelling the plaintiffs to discover and produce any and all books and other papers or documents bearing record of the transactions upon which said suit is based, or any of such transactions, as well as all books or documents which may be necessary to enable the defendants to make their reply or answer to said declaration, in order that the defendants might be able to make such reply or answer. The petition was verified by the affidavit of one of the defendant firm, in which he swore that the books, papers and documents whereof discovery is sought by the petition are under the con-

trol or in the possession of said plaintiffs, or some of them, and that he is advised by his counsel, and verily believes, that the discovery of the books, papers and documents mentioned in said petition is necessary to enable him to draw his answer or reply to the said plaintiffs' declaration.

Upon this petition the circuit judge made an order requiring the plaintiffs, on or before the 7th day of April, 1890, to produce and deposit with the Clerk of the Circuit Court in and for Hillsborough county, Florida, any and all books of account, and other papers or documents, bearing record of the transactions upon which the said suit is predicated, or any of said transactions, as well as all books and documents which may be necessary to enable the parties defendant to make their reply or answer to said declaration.

The plaintiffs afterwards presented their petition to the judge alleging that they were merchants in the city of Philadelphia, Pennsylvania, doing an extremely large business, and had been so doing for a great number of years. That the books of account in which the account of the defendants appear contain a large number of other accounts extending over a period of eight or ten years. That said books are too valuable to them for the same to be sent out of their control or custody. That they are perfectly willing that any and every item of account on said books material to the defendants in making their defense to this action should be inspected by said defendants, and their said books are open, and will be open at any and all times to the inspection of the defendants or any person competent to examine the same appointed by the defendants. That if the order granted by the

court is not amended so that a compliance therewith can be made in some other way than by shipping said books to Tampa, Florida, they will practically be denied the right to bring any suit in this matter. Said petition prayed that said order be so modified as that they could reasonably comply therewith. Upon this petition the judge made the following order: "The court being of opinion that the right of the plaintiffs can not abrogate the right of the defendants, and that this court can not make or sanction any order requiring defendants to go beyond the jurisdiction of the court, while they undoubtedly have the right to inspect the books; therefore the petition is denied."

Afterwards, in May, 1891, the plaintiffs by their attorneys filed with the Clerk of the Circuit Court a written notice of their refusal to comply with the order made by the judge for the deposit by the plaintiffs of their books of account with said clerk. Thereupon the Clerk of said Circuit Court, on May 4th, 1891, entered an order dismissing the plaintiffs' suit, and adjudging to the defendants their costs taxed at the sum of ten dollars. From this judgment the plaintiffs (prior to the adoption of the Revised Statutes) have taken their statutory appeal.

The extraordinary order of the Circuit Judge, requiring the plaintiffs, residents of the city of Philadelphia, to ship all of their books of account that may contain any entry appertaining to the defendants, to Florida, and to deposit them with the Clerk of the Circuit Court at Tampa, to be inspected by the defendants, for the alleged purpose of enabling the defendants to frame their pleadings to the plaintiffs' declaration, has no foundation in law or the practice

of the courts, unless it can be found in Rule 58 of the rules prescribed for the government of the Circuit Courts in common law actions, which rule is as follows: "The judge may, upon the application by petition of either party, order the discovery and production of books, papers or documents in the possession or under the control of the other party which may be necessary to enable the party making the application to frame his reply or answer to any pleading of his adversary. The petition for such discovery shall state the facts and circumstances on which the discovery is claimed, and shall be verified by affidavit stating that the books, papers or documents whereof discovery is sought, are under the control or in the possession of the other party, and that he is advised by his counsel, and verily believes, that the discovery of the books, papers or documents mentioned in such petition is necessary to enable him to draw his answer or reply to his adversary's pleading. A copy of the petition shall be served upon the opposite party, and six days' notice of the time and place of application for the order shall be given. The order granting the discovery shall specify the mode in which the same is to be made, which may be either by requiring the party to deliver sworn copies of the documents to be discovered, or by requiring him to produce and deposit the same with the Clerk of the Court in which the trial is to be had. The order shall also specify the time within which the discovery or deposit is to be made. The order directing a discovery shall operate as a stay of all other proceedings of the adverse party in the cause until such order shall have been complied with or vacated, and the party obtaining such order shall have, after such compliance or vacation, until the next rule day to pre-

pare his pleading, provided ten days intervene before the next rule day, and if not, then he shall have until the next succeeding rule day."

This rule has evidently been copied from the rules of practice of the Supreme Court of the State of New York, as it embodies substantially and almost literally the provisions of rules 14, 15, 16 and 17 of the New York Supreme Court Rules, found at page 700 of Voorhees N. Y. Annotated Code, 10th edition (1871). The courts of New York in passing upon this rule say that "an application for discovery of books and papers must specially state what information is wanted, and that the books or papers referred to contain such entries. And this must be stated upon positive affirmation, and not on mere information and belief; and that the uniform course of decision has been against any attempt to use this power of the court for the mere purpose of hunting for evidence." Walker vs. Granite Bank, 44 Barb. 39. And again in Opdyke vs. Marble, Ibid, 64, it is said: "Parties are not allowed to *fish* for evidence in the private books of account of others, who are parties to an action, upon a simple guess that there may be some entry that will help their case." And again in Mora vs. McCredy, 2 Bosw. (15 N. Y. Super. Ct.) 669, it is said: "It may be very much desired by a defendant to know, before he answers, what facts the plaintiff may be able to prove, and what admissions or evidence, statements and accounts rendered by him to the plaintiff may contain; and such knowledge might, perhaps, serve as a useful precaution, admonishing the defendant what he may not, with safety to his reputation, aver or deny; but such considerations are no reasons for compelling a discovery, to enable defendant to answer. * * An

order requiring the plaintiff to produce, or give copies of papers, to enable the defendant to answer the complainant, will not be made when it is manifest that the defendant has no defense, which he can not set up in due legal form, to raise the proper issues, without the aid of such papers. * * Discovery may be ordered, to assist the defendant to facts, without which he can not frame an answer which will protect his rights in the action itself, but the object for which discovery will be ordered is not to prevent a defendant from answering untruthfully, or to inform him how fully he may have furnished the plaintiff with the means of disproving the answer which he may propose or interpose." And in Gelston vs. Marshall, 6 How. Pr. 398, it is held that in applications of this kind the defendant must show *how or why* it is necessary to have the discovery in order to prepare his answer.

The application of the defendants here contained not a single element that entitled them to a discovery or inspection of the plaintiffs' private books of account for the alleged purpose of enabling them to formulate such pleas as were necessary to raise the proper issues to protect their rights fully in the case. No facts are stated or shown as to *how or why* an inspection of the plaintiffs' books are in anywise necessary to the formulation of their pleas; neither is it affirmatively stated that said books do in fact contain any entries that will assist the defendants to formulate their pleadings; neither are any specific books or papers designated in which such entries are to be found; neither is there any allegation to show what the nature and character of the supposed entries in the books are, if any. Neither is there anything shown that entitles the defendants to any inspection of all of the plaintiffs' books.

The bare fact that the defendants' own books have been destroyed in which they had the entries of their side of the transactions with the plaintiffs, does not entitle them to an inspection of the plaintiffs' books. On the other hand, it is patent affirmatively upon the face of the defendant's application for this discovery that an inspection of the plaintiffs' books was not at all necessary to enable them to frame proper pleadings in the cause. In their petition for the order they allege under oath that they were not indebted to the plaintiffs in the sum sued for, or in any amount. If this be true, no other pleading is necessary fully to present the issue than the simple plea of "never was indebted," or some other well recognized or appropriate plea, and no entry in the plaintiffs' books could have been necessary to enable the defendant to formulate it. In a case like the one disclosed by this record, where a firm of merchants in another State sue a firm residing in this State for the collection of an open account alleged to be due them, and there is no relationship of trust between the parties in the transactions involved, we can hardly conceive of a case where this rule could properly be invoked to compel the plaintiffs to discover to the defendants their private books preliminarily to the trial of the cause for the purpose of enabling the defendants to formulate their pleadings. The circumstances of such a case would have to be peculiarly rare. We can readily see how an insight into the plaintiffs' books and papers would be greatly advantageous to the defendant in many cases, giving him the forearmed power of using the information *as proofs at the trial*, or preparing him in advance to rebut it by proofs; but such was never the design of the rule. As said by the courts of the State

from which we have adopted it, a party can not use it as tackle to *fish for evidence.* Whenever the rule is invoked the party must show affirmatively, by necessary allegations of fact, *how* and *why* an inspection of the books of his adversary is *necessary* to enable him to *formulate his pleadings.* And in cases where the plaintiff with his books are in another State, or at such distance as that a production of them in court would be attended with great expense, inconvenience or detriment; the court should never require the production of the originals where sworn copies of the pertinent matters therein would fully subserve the purposes and objects of the rule. The only penalty prescribed by the rule for non-compliance with an order made in pursuance of it, is that, the proceedings shall be stayed until there is a compliance, or until the order is revoked. The clerk of the court below, without any authority whatsoever, visited the non-compliance of the plaintiffs here with an entry of judgment of dismissal at the plaintiffs' cost. If such a penalty could ever be properly visited upon a non-compliant in such a case, it would certainly have to come from the judge, and not from the ministerial officer of the court.

Filed here with the papers in the case is a detached paper, forming no part of the certified transcript of the record on appeal, that purports to have been signed by the counsel for the appellants, in which he certifies that this entry of the judgment of dismissal by the clerk below was done at his motion and request. Fortunately for the appellants in the cause we can not consider this paper because of its not forming any part of the record that is open to us; otherwise we should have to apply the usual rule, that a party plaintiff can not be heard upon

appeal to question the correctness of an order of dismissal of his case granted at his own request.

The judgment entered by the clerk dismissing the cause at plaintiffs' cost, and the orders of the Circuit Judge requiring the plaintiffs to deposit their books of account and other papers and documents with the Clerk of the Circuit Court of Hillsborough county, are reversed and set aside, with directions for such further proceedings in the cause as shall be proper and consonant with law and the rules of practice.